[No. B152561. Second Dist., Div. Seven. July 17, 2002.]

ROYAL SURPLUS LINES INSURANCE COMPANY, INC., et al.,
Plaintiffs and Appellants, v.
RANGER INSURANCE COMPANY, Defendant and Respondent.

Counsel

Marrone, Robinson, Frederick & Foster, J. Alan Frederick and Ilona Gordon for Plaintiffs and Appellants.

George D. Yaron and James I. Silverstein for Defendant and Respondent.

## Opinion

**WOODS, J.**—Plaintiff Royal Surplus Lines Insurance Company, Inc. (Royal) and its insured, plaintiff 1915 Ocean Front Walk, LLC (Ocean), appeal from a judgment entered after the court sustained the demurrer of defendant Ranger Insurance Company (Ranger). Plaintiffs contend the court erred when it sustained the demurrer on the basis plaintiffs could not sue an insured and its insurer in the same action. We agree with plaintiffs and reverse and remand.

### Factual and Procedural Synopsis

Ocean is the owner of a residential apartment complex located in the City of Santa Monica. Royal was the general liability insurance carrier of Ocean at all relevant times, but excess to any additional insurance.

In May 1998, Ocean commenced a large-scale construction project on the apartment complex. The project was intended to refurbish and improve the property as well as bring it into compliance with local and state building codes. Calstar Management, Inc., was the general contractor.[1] Ocean contracted with various subcontractors to perform work on the project.

On August 4, Ocean entered into a written contract (the Agreement) with Ultimate Construction (Ultimate) to perform construction work, including framing, on the complex. The Agreement included an indemnity provision that required Ultimate to defend and indemnify Ocean for claims arising out of Ultimate's work.[2] The Agreement also included a provision requiring Ocean to be named as an additional insured on Ultimate's general liability policy. During all relevant times, Ranger was the general liability insurer of Ultimate.

On October 18, six tenants of the apartment complex filed a lawsuit against Ocean for injuries allegedly sustained during the construction

---

[1]Calstar was also a plaintiff, but, according to appellants, it has been dismissed from this lawsuit.

[2]Similar agreements were allegedly reached with six other subcontractors, but they are not parties to this appeal.

project. The underlying action, which alleged a conspiracy to change the character of the apartment complex from one for lower and middle income tenants to a luxury complex for wealthy individual and corporate tenants by using intrusive construction techniques to drive out the existing tenants, asserted causes of action for breach of the covenant of quiet enjoyment, breach of the warranty of habitability, nuisance, intentional infliction of emotional distress and negligence. By amendment, the tenants added causes of action for trespass and illegal eviction.

During the pendency of the underlying action, Ocean tendered its defense and indemnity to the subcontractors, including Ultimate, and to their insurance carriers, including Ranger. The tenders to the subcontractors were based on their contractual duty to defend and indemnify Ocean and their obligation to procure insurance naming Ocean as an additional insured. The tenders to the carriers were based on their duties to defend and indemnify Ocean as an additional insured under their respective policies. Ocean did not cross-complain against any of the subcontractors in the underlying action.

Ultimate and Ranger refused and/or failed to respond to Ocean's tenders or to contribute any payment toward settlement at a mediation in the underlying action. A settlement (for $446,250) was reached with the tenants. That settlement was funded entirely by Royal.

Ocean and Royal then filed this action to recover the deductible and the amount paid by Royal to settle the underlying action and the defense fees incurred by them in the underlying action as well as the fees incurred in the instant action.

In the first amended complaint, the operative pleading, Ocean alleged a cause of action against the subcontractors for breach of contract for failing to defend and indemnify Ocean for the claims made against it in the underlying action and for failing to procure the necessary insurance naming Ocean as an additional insured.[3] Royal alleged causes of action for equitable subrogation, equitable contribution and indemnity against the subcontractors. Ocean alleged causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing against the insurers. Royal alleged causes of action for equitable subrogation, equitable contribution and breach of the implied covenant of good faith against the insurers. The declaratory relief cause of action by all plaintiffs against all defendants incorporated all the preceding causes of action.

[3]Appellants alleged Ranger issued Ultimate a general liability policy and attached "a true and correct copy of the additional insured endorsement in favor of [Ocean]." The Ranger policy was not attached to the complaint.

The court sustained Ranger's demurrer without leave to amend solely on the ground of misjoinder in that it was improper to name both the insured and insurer in the same action. The court entered a judgment of dismissal, and appellants filed a timely notice of appeal.

## DISCUSSION

### I. *Introduction*

The court sustained Ranger's demurrer on the ground of misjoinder. The court reasoned the potential for conflict between the insurance company and the insured was too great and concluded it was improper for them both to remain as parties to the action. ▮ Demurrers on the ground of misjoinder lie only when the defect appears on the face of the complaint or matters judicially noticed. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2002) ¶¶ 7:78-7:83.2.)

▮ Citing *Anaya v. Superior Court* (1984) 160 Cal.App.3d 228 [206 Cal.Rptr. 520], appellants contend Ranger had no standing to assert misjoinder because it did not make a showing it was prejudiced by the alleged misjoinder. "Although the code seems to authorize the sustaining of a demurrer solely on such a technical objection [of misjoinder], the authorities indicate that the defendant is entitled to a favorable ruling only when he can show some prejudice suffered or some interests affected by the misjoinder. ▮ In practical effect, this means that such a demurrer can be successfully used only by the persons improperly joined. A proper defendant is seldom injured by the joinder of unnecessary or improper parties plaintiff or defendant, and his demurrer ought to be overruled." (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 926, pp. 385-386, italics omitted.) ▮ The issue here is, of course, whether Ranger was improperly joined.

### II. *Misjoinder*

#### A. *Royal Globe Factors*

Ranger contends *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], disapproved on another point in *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 292, 304-305 [250 Cal.Rptr. 116, 758 P.2d 58] and its progeny support the court's decision. ▮ In *Royal Globe*, the court concluded a joint lawsuit against both the insured for negligence and the insurer for violating its duties under

Insurance Code section[4] 790.03, subdivision (h), would be improper.[5] (*Royal Globe*, at p. 891.) The court held the third party claimant might not bring suit against the insurer until the action between the injured party and the insured was concluded. (*Id.*, at p. 884.)

Appellants argue *Royal Globe* and its progeny are inapposite as this is a first party action brought by an insured of Ranger (Ocean) based on the contractual obligations of an insured (Ultimate) and insurer (Ranger) to defend and indemnify appellants in an underlying action that has been resolved. Under *Royal Globe*, insureds are identified as first parties, and claimants are identified as third parties. (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1163, p. 597.)

In *Moradi-Shalal v. Fireman's Fund Ins. Companies, supra*, 46 Cal.3d 287, 306, the Supreme Court explained its reasoning in *Royal Globe*:

"In *Royal Globe*, the third party claimant attempted to join the insurer as a defendant in her pending action against the insured on the underlying tort claim. We concluded that a joint lawsuit against both the insured for negligence and the insurer for violating its duties under section 790.03, subdivision (h), would be improper, for three reasons. . . . First, a joint trial 'would obviously violate both the letter and spirit of [Evid. Code, § 1155].' . . . That section provides that evidence that an alleged tortfeasor is insured is inadmissible to prove the insured's negligence or wrongdoing. Its 'obvious purpose' is to prevent the prejudicial use of such evidence in a proceeding to determine the insured's liability. . . .

"Second, a joint trial would hamper the defense of the insured on the liability question. We stated, 'unless the trial against the insurer is postponed until the liability of the insured is first determined, the defense of the insured may be seriously hampered by discovery initiated by the injured claimant against the insurer.' . . . Third, 'damages suffered by the injured party as a result of the insurer's violation of [section 790.03] may best be determined after the conclusion of the action by the third party claimant against the insured.' " (Citations and italics omitted.)

Ranger, which argues appellants read *Royal Globe* too narrowly, seems to suggest an insured and an insurer should never be joined in the same action. On the other hand, appellants cite a number of cases in which

---

[4]Unless otherwise noted, all statutory references are to the Insurance Code.

[5]The fact appellants' bad faith claims were not couched in terms of violations of section 790.03 is not a reason to distinguish *Royal Globe, supra*, 23 Cal.3d 880. (*Geraci v. United Services Automobile Assn.* (1987) 188 Cal.App.3d 1245, 1253 [233 Cal.Rptr. 896].)

an insured and its insurer were sued in the same action, but, as pointed out by Ranger, no issue of misjoinder was raised or decided in those cases. Moreover, none of those cases included a bad faith claim.

A practice guide explains why an insured and insurer usually may not be sued in the same action. ■ "Generally, an insurer may not be joined as a party-defendant in the underlying action against the insured by the injured third party. The fact that an insurer has agreed to indemnify the insured for any judgment rendered in the action does not make the insurer a proper party. Liability insurance is not a contract for the benefit of the injured party so as to allow it to sue the insurer directly." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶ 15.44, italics omitted.) ■ Ocean, which is not an injured third party, is suing Ranger for breach of contract and breach of the implied covenant. An additional insured has standing to sue an insurer for breach of contract and breach of the implied covenant. (*Id.*, ¶ 12:56; *San Diego Housing Com. v. Industrial Indemnity Co.* (1998) 68 Cal.App.4th 526, 536 [80 Cal.Rptr.2d 393].)

Ranger cites no cases in which *Royal Globe*'s holding has been applied to other than an injured third party claimant nor any case in which a suit by an additional insured against an insured and the insurer was found to be a misjoinder. Respondent cites *Industrial Indemnity Co. v. Mazon* (1984) 158 Cal.App.3d 862, 865 [204 Cal.Rptr. 885] and *Zahn v. Canadian Indem. Co.* (1976) 57 Cal.App.3d 509, 513-514 [129 Cal.Rptr. 286] in support of its proposition that an insurer may not be joined in an action against the insured. Both those cases involved a bad faith claim by an injured third party claimant under a policy issued to the alleged tortfeasor. In the case at bar, the injured third party claimants would be the tenants, who are no longer involved as a settlement was reached with them. If Ocean is an additional insured, then it is a first party.

1. *Evidence Code section 1155*

Appellants contend Evidence Code section 1155 has no application to their breach of contract claims because those claims did not require a finding Ultimate was a tortfeasor. Evidence Code section 1155 provides: "Evidence that a person was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm is inadmissible to prove negligence or *other wrongdoing*." (Italics added.)

Although Ranger argues a breach of contract can be construed as a wrongdoing, it concedes proof of a policy would have to be admitted in order to determine whether Ultimate procured an insurance policy as required by its Agreement with Ocean. Thus, as proof of insurance would be

offered by the insured as a defense against a breach of contract claim, this case is not one involving the prejudicial use of evidence of liability insurance against the insured. (See *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1986) 184 Cal.App.3d 1428, 1433 [229 Cal.Rptr. 409] [The court declined to extend *Royal Globe* to a bad faith action by an insured against her own insurance company, reasoning: "The theoretical basis for the *Royal Globe* decision has no relevance to this case. No potential discovery problems exists as no third party is involved. The prejudicial use of evidence of insurance is not a concern in a suit by an insured against an insurer."].)

### 2. *Defense/Discovery*

Ranger contends its defense of Ultimate could be hampered by discovery propounded on behalf of appellants such that it makes sense for an action against it to be commenced only after the conclusion of Ocean's claims against Ultimate. Ranger suggests that it could be forced to choose between asserting coverage defenses (including policy exclusions) to repel appellants or not asserting coverage defenses in order to protect its insured. As an example, Ranger states it would be placed in a difficult situation if it knew its underwriting file showed Ultimate had told Ranger not to issue, or did not request, an additional insured endorsement for Ocean. Ranger insists that its fiduciary obligation dictates it take all steps possible to protect Ultimate's interests. Ranger cites no authority that raising coverage defenses would constitute a breach of its fiduciary obligation to its insured. Generally, insurers do not have a fiduciary relationship with their insureds. (See discussion in Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶¶ 11:146 to 11:160.)

Ranger also states that pursuant to Civil Code section 2860, an insurer would almost always have to provide its insured with independent counsel if both the insurer and its insured were sued in the same action, but does not discuss if raising coverage defenses is the type of conflict requiring appointment of independent counsel. Subdivision (b) of Civil Code section 2860 provides in part, "a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage." (See discussions about whether an insurer is obligated to provide independent counsel when it denies coverage in *Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1006-1007 [71 Cal.Rptr.2d 882]; *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1394 [25 Cal.Rptr.2d 242] ["For example, the mere fact the insurer disputes coverage does not entitle the insured to *Cumis* [independent] counsel."]; *James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, 1108 [111 Cal.Rptr.2d 181] [" 'If the issue on which coverage turns is independent of

the issues in the underlying case, *Cumis* counsel is not required.' "]; Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶¶ 7:772 to 7:789.)

If an insurer's denial of coverage does not necessarily give rise to a conflict requiring the appointment of independent counsel, then raising coverage defenses may not create a prejudicial conflict in the context of a claim of misjoinder. It is not obvious from the face of the complaint whether there is a conflict in this case. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶¶ 7:79 to 7:82 [Demurrers on the ground of misjoinder lie only where the ground appears on the face of the complaint; it is rare for this ground to appear on the face of the complaint.].)

Ranger opines a jury could become sympathetic to Ocean if it found out Ocean contractually required Ultimate to name Ocean as an additional insured. Ranger posits a jury would have to hear a great deal of evidence regarding Ocean's claims against Ultimate that are irrelevant to any coverage suit between Ocean and Ranger. According to Ranger, there should be separate trials in which Ultimate's liability to Ocean would be entirely litigated in the first action, and insurance coverage under the Ranger policy would be entirely litigated in the later action and the only possible overlap would be the production of the Ranger policy. Ranger opines that if it is not a party to the action, then the only insurance issues that will need to be resolved involving Ultimate are related to whether Ultimate obtained a suitable additional insured endorsement.

Ocean's claims against Ultimate are based on the Agreement. Adducing proof of an insurance policy will not necessarily resolve the issue if suitable insurance was acquired. The issue of whether that policy complied with the terms of the Agreement would require evidence of the nature of the procured insurance and whether it meets the contractual obligation, which would necessitate a comparison of the terms of the policy and the terms of the Agreement. For instance, if the denial of coverage was based on an exclusion at variance with the terms of the Agreement, Ultimate might be liable for procuring an inadequate policy under the Agreement. (See *Chevron U.S.A., Inc. v. Bragg Crane & Rigging Co.* (1986) 180 Cal.App.3d 639 [225 Cal.Rptr. 742]; see also *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 634 [119 Cal.Rptr. 449, 532 P.2d 97] [a contractor's obtaining an insurance policy may be part of the consideration for a construction job].)

Appellants state that the complaint alleged either of two alternatives—that the subcontractors are in breach for failing to procure the insurance or the carriers are in breach for failing to defend and indemnify Ocean—and that

discovery will eliminate one of those issues.[6] Appellants posit that if litigated separately, those issues might produce different results in that one jury might find the subcontractor obtained insurance while a different jury might find insurance was not obtained. We conclude although there might be some prejudice to Ultimate if Ranger remains in the action, there is also some possible prejudice to Ocean if Ranger does not. Most of the issues alleged against Ultimate and Ranger concern coverage issues, and the answers to those issues lie in interpretation of the Ranger policy and the Agreement and are inextricably intertwined. (See *Geraci v. United Services Automobile Assn.*, *supra*, 188 Cal.App.3d 1245, 1251.) Accordingly, possible prejudice is not a sufficient reason to find Ranger was misjoined in this action.

### 3. *Damages*

If Ultimate did not procure the insurance, then appellants have no cause of action against Ranger. Appellants attached to their complaint an endorsement naming Ocean as an additional insured on Ultimate's policy. Thus, it appears the issue of procurement may be straightforward. However, as noted above, evidence Ultimate obtained insurance naming Ocean as an additional insured is not necessarily dispositive of the breach of contract claims as there is still the issue of whether that insurance complied with the requirements of the Agreement.

Finally, Ultimate's liability depends on whether the claims alleged in the underlying action were covered by the defend and indemnify provisions of the Ranger policy and/or the Agreement. ■ The Supreme Court noted, " 'It is fundamental that an insurance contract is, by nature, an indemnity contract; no enforceable claim accrues against the insurer until the insured's liability is in fact established.' " (*Moradi-Shalal v. Fireman's Fund Ins. Companies*, *supra*, 46 Cal.3d 287, 306.)

■ The endorsement of the Ranger policy issued to Ultimate states, "CERTIFICATE HOLDER [OCEAN] IS SHOWN AS ADDITIONAL INSURED BUT ONLY WITH RESPECT TO LIABILITY ARISING OUT OF OPERATIONS PERFORMED BY THE NAMED INSURED."

Such an additional insured endorsement covering liability "arising out of" the named insured's work provides broad coverage as it connotes more than causation and includes the duty to defend and indemnify and may cover liability arising out of the owner's sole negligence. (See Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶¶ 3:2 & 7:1407 to 7:1410.) The

---

[6]Appellants' assumption the carriers had a duty to defend and indemnify is not necessarily so.

duty of an insurer to provide a defense to an additional insured is broad and applies when there is only a potential for coverage and extends to the entire action. (See *Presley Homes, Inc. v. American States Ins. Co.* (2001) 90 Cal.App.4th 571, 574-577 [108 Cal.Rptr.2d 686].)

In *Moradi-Shalal*, the court held "there must be a conclusive judicial determination of the insured's liability before the third party can succeed in an action against the insurer under section 790.03." (*Moradi-Shalal v. Fireman's Fund Ins. Companies, supra*, 46 Cal.3d 287, 306.) However, there is no requirement that an action against the third party tortfeasor be finally determined and liability established for the insured to proceed against her own insurance company for bad faith. (See *Carter v. Superior Court* (1987) 194 Cal.App.3d 424, 428 [239 Cal.Rptr. 723].)

B. *Royal Globe Is Inapplicable*

This appeal involves only one of seven subcontractors. The underlying action was allegedly settled. Even though appellants characterize the settlement as fair and reasonable in their appellate brief, no copy of the settlement was attached to the complaint. The complaint did not allege the settlement had been determined to be fair and reasonable or that it was a good faith settlement pursuant to Code of Civil Procedure sections 877 and 877.6. Thus, it appears there are issues relating to whether the amount of the settlement was fair and the liability of each subcontractor. It may not be possible to determine the liability of Ultimate and Ranger without determining the liability of the other subcontractors and their insurers.

Even though *Royal Globe* was based on prejudice to the insurer, we note that this action was not an action by a third party claimant nor an action for negligence against an insured and for bad faith against the tortfeasor's insurer. Moreover, given the inextricably intertwined issues relating to coverage and Ranger's failure to offer any convincing argument that it would be prejudiced by being joined in an action against Ultimate, we decline to extend *Royal Globe* to this action. Furthermore, the claims involve insurance coverage issues, which may be largely questions of law. Accordingly, we conclude Ranger was not improperly joined in this action as there was no misjoinder on the face of the complaint.

III. *Bifurcation*

At the hearing, the court acknowledged appellant could file a separate action against Ranger, and it would probably be declared a related case. It appears that approach is a distinction without a difference. Accordingly,

rather than apply a hypertechnical rule, the possibility of bifurcation should be explored in this case. (See *Montrose Chemical Corp. v. Superior Court (Canadian Universal Ins. Co.)* (1994) 25 Cal.App.4th 902, 910-911 [31 Cal.Rptr.2d 38]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶¶ 12:406 to 12:430.)

Ranger complains appellants may not raise severance (i.e., bifurcation) for the first time on appeal. Although appellants did not make a motion to bifurcate, at what was a very early stage in the proceedings, they did raise the possibility in their opposition to Ranger's demurrer. Ranger also expresses concern the same jury determining liability issues would be presented evidence of coverages and damages, which might make the jury more inclined to find against the insured if there are close questions of liability or damages. ■ It is within the discretion of the court to bifurcate issues or order separate trials of actions, such as for breach of contract and bad faith, and to determine the order in which those issues are to be decided. (See *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1271 [258 Cal.Rptr. 66]; *Ahmed v. Peterson* (1986) 186 Cal.App.3d 374, 377 [230 Cal.Rptr. 636]; *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court, supra*, 184 Cal.App.3d 1428, 1433.) ■ What issues and/or causes of action should be bifurcated, the order in which they should be tried, and whether separate juries are necessary, are matter to be addressed by the superior court and the parties.

The issue before this court was whether or not Ranger was misjoined. As the trial court did not rule on any of the other grounds for demurrer, we need not address them.

### DISPOSITION

The judgment is reversed, and the matter is remanded to the superior court with directions to enter an order overruling the demurrer on the ground of misjoinder. Appellants to recover costs on appeal.

Lillie, P. J., and Johnson, J., concurred.